FILED IN
COURT OF CRIMINAL APPEALS

December 18, 2015

ABEL ACOSTA, CLERK

PD-1501-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 12/17/2015 3:15:33 PM
Accepted 12/18/2015 4:23:09 PM
ABEL ACOSTA
CLERK

CASE NO. PD-1501-15

---

IN THE COURT OF CRIMINAL APPEALS OF TEXAS
AUSTIN, TEXAS

---

RAY HAWKINS, JR.,
*Appellant*

VS.

THE STATE OF TEXAS,
*Appellee*

---

On Petition for Discretionary Review from
The Twelfth Court of Appeals
In No. 12-13-00394-CR Affirming the
Judgment of Conviction in Cause No. 17626 from the
2nd Judicial District Court of
Cherokee County, Texas

---

APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

---

STEVEN J. LIEBERMAN
TBA NO. 12334020
712 MAIN STREET, SUITE 2400
HOUSTON, TEXAS 77002
TELEPHONE: 713-228-8500
FACSIMILE: 713-228-0034
EMAIL: SLIEBER699@AOL.COM

COUNSEL FOR APPELLANT,
RAY HAWKINS JR.

## IDENTITY OF JUDGES, PARTIES AND COUNSEL

Pursuant to Tex. R. App. R. 68.4(a), the following is a list of all parties to the trial court's judgment as well as the names and addresses of trial and appellate counsel.

Presiding Judge
The Honorable Dwight L. Phifer
2nd Judicial District Court
Rusk, Cherokee County, Texas

Attorneys for Appellee    (State of Texas)
Nancy Nemer                (at trial and on appeal)
Julie Stone                (at trial)
Texas Attorney General's Office
P.O. Box 12549
Austin, Texas 78711

Attorneys for Appellant
Frank Dobrovolny          (at trial)
217 S. Ragsdale Street
Jacksonville, Texas 75757

Steven J. Lieberman       (on appeal)
712 Main, Suite 2400
Houston, Texas 77002

Appellant
Ray Hawkins, Jr.

# TABLE OF CONTENTS

IDENTITY OF JUDGES, PARTIES, AND COUNSEL ......................................... ii

TABLE OF CONTENTS.................................................................. iii

INDEX OF AUTHORITIES................................................................iv

STATEMENT REGARDING ORAL ARGUMENT ................................................v

STATEMENT OF THE CASE..............................................................v

STATEMENT OF PROCEDURAL HISTORY...................................................vi

APPELLANT'S GROUND FOR REVIEW ....................................................2

> Following A Determination That Jury Charge Error Allowed A Non-Unanimous Verdict, The Court Of Appeals Failed To Apply Appropriate Weight To The Prosecutor's Argument In Conducting Review For Egregious Harm Pursuant To *Almanza v. State,* 686 S.W.2d 157 (Tex. Crim. App. 1984).

ARGUMENT .........................................................................2

PRAYER FOR RELIEF ................................................................5

CERTIFICATE OF COMPLIANCE.........................................................6

CERTIFICATE OF SERVICE ...........................................................6

APPENDIX ....................................................................... A-1

# INDEX OF AUTHORITIES

**CASES**                                                                           **PAGE**

*Almanza v. State,*
686 S.W.2d 157 (Tex. Crim. App. 1984) ...............................................................2,4

*Francis v. State,*
36 S.W.3d 121 (Tex. Crim. App. 2000) ...................................................................3

*Hawkins v. State,*
12-13-00394-CR (Tex. App. – Tyler 10/21/2015) ..................................................2,4

*Ngo v. State,*
175 S.W.3d 738 (Tex. Crim. App. 2005) ..................................................................3

*Stuhler v. State,*
218 S.W.3d 706 (Tex. Crim. App. 2007) ...............................................................2,3,4

## RULES

Tex. R. App. P. 68.2. ..................................................................................................vi

Tex. R. App. P 66.3 (c) ...............................................................................................5

Tex. R. App. R. 68.4(a)............................................................................................. ii

iv

## STATEMENT REGARDING ORAL ARGUMENT

Appellant requests oral argument as it will assist the Court in fashioning the proper relief. Oral argument would be of significant assistance to this Court as this case presents an important issue regarding the analysis for harm following jury charge error allowing a non-unanimous verdict.

## STATEMENT OF THE CASE

Appellant, Ray Hawkins Jr., was charged by indictment in Cause No. 17626 with two (2) counts of aggravated robbery. (CR 7-8).[1] On November 18, 2013, following his plea of not guilty to Count One, the case proceeded to trial before a jury. On November 19, 2013, Appellant was found guilty of aggravated robbery as charged in the indictment. (CR 180). On November 21, 2013, the jury assessed punishment at seventy (70) years in the Texas Department of Criminal Justice – Correctional Institutions Division. (CR 189). The trial court's certification of appeal was entered on November 21, 2013. (CR 190). On December 23, 2013, Appellant timely gave written notice of appeal. (CR 200). Appellant's motion for new trial was denied on January 27, 2014. (21 RR 5).

---

[1] "CR" Will be used to reference the Clerk's Record, and "RR" will be used to reference the Reporter's Record.

## STATEMENT OF PROCEDURAL HISTORY

The judgment of the trial court was modified and affirmed by the Twelfth Court of Appeals in an opinion delivered October 21, 2015. *Hawkins v. State*, 12-13-00394-CR (Tex. App. – Tyler 10/21/2015)(mem. op., not designated for publication). No motion for rehearing was filed. This Petition for Discretionary Review will be filed on or before the extended deadline of December 21, 2015, pursuant to Tex. R. App. P. 68.2.

The Appellant presents one (1) ground for review before this Honorable Court.

CASE NO. PD-1501-15

IN THE COURT OF CRIMINAL APPEALS OF TEXAS
AUSTIN, TEXAS

RAY HAWKINS JR.,
*Appellant*

VS.

THE STATE OF TEXAS,
*Appellee*

APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

TO THE HONORABLE JUDGES OF THE COURT OF CRIMINAL APPEALS:

COMES NOW, RAY HAWKINS JR., Appellant in the above-styled and numbered cause of action, by and through counsel of record, Steven J. Lieberman, and pursuant to Tex. R. App. P. 66.1, respectfully urges this Court to grant discretionary review of this cause, and in support thereof would show unto this Honorable Court the following:

1

<u>APPELLANT'S GROUND FOR REVIEW</u>

Following A Determination That Jury Charge Error Allowed A Non-Unanimous Verdict, The Court Of Appeals Failed To Apply Appropriate Weight To The Prosecutor's Argument In Conducting Review For Egregious Harm Pursuant To *Almanza v. State,* 686 S.W.2d 157 (Tex. Crim. App. 1984).

<u>ARGUMENT</u>

A. The Court of Appeals has Rendered a Decision in Conflict with the Decisions of this Court.

Appellant was charged in a single count with the aggravated robbery of two (2) complaining witnesses. (CR 7-8). In both the indictment and the application paragraph of the jury charge, the State alleged in the disjunctive that Appellant committed an aggravated robbery of Christina Martinez or Erica Martinez. (CR 176). Along with the State's concession, the Court of Appeals found that the disjunctive charge denied Appellant a unanimous verdict, and was thus erroneous. *Hawkins v. State*, 012-13-00394-CR (Tex. App. – Tyler 10/21/2015)(Slip Opinion at 3).

In *Almanza v. State*, this Court established the factors that a reviewing court address in order to determine harm. *Almanza v. State,* 686 S.W.2d 157, 171 (Tex. Crim. App. 1984); see also *Stuhler v. State,* 218 S.W.3d 706, 719 (Tex. Crim. App. 2007). One component of the harm analysis is for the reviewing court to consider the argument of counsel. *Almanza v. State,* 686 S.W.2d at 171.

2

The jury charge in the instant case shows that the jury was instructed in the disjunctive without any directive that the verdict had to be unanimous regarding each alleged complaining witness. More importantly, during closing argument the prosecutor addressed the elements of the crime the State had to prove. Specifically, the State argued:

> And with intent or to maintain control of that property intentionally or knowingly threaten or place *Christina Martinez or Erica Martinez* in fear of imminent bodily injury or death.

(17RR. 137-38)(emphasis added). The state's argument accentuated the error that allowed for either Christina Martinez or Erica Martinez to be threatened or placed in fear.

This very argument of the prosecutor invited the jury to return a guilty verdict without being unanimous on which complaining witness could be placed in fear of imminent bodily injury or death, a material element of robbery. In *Ngo v. State,* 175 S.W.3d 738, 752 (Tex. Crim. App. 2005), the Court of Criminal Appeals found egregious harm when the jury charge did not contain a unanimity instruction and the jury was told it need not return a unanimous verdict. *See also Francis v. State,* 36 S.W.3d 121, 125 (Tex. Crim. App. 2000).

In *Stuhler v. State*, the Court of Criminal Appeals held that the defendant suffered egregious harm from a jury charge that allowed for a non-unanimous verdict

on the issue of whether a child suffered serious bodily injury or serious mental injury. 218 S.W.3d at 719-20. Although neither the trial court nor the State stressed to the jury that it need not agree about which of the elemental facts occurred, the State did argue to the jury that the evidence would support a verdict based on either bodily or mental injury *Id.* at 719. Similarly, in the instant case the State's final argument highlighted for the jury that it could apply one of the statutory elements to either Christina Martinez or Erica Martinez.

While acknowledging that the prosecutor referenced the disjunctive jury charge, the Court of Appeals summarily concludes that the prosecutor did not mean for the jury to find Appellant committed the aggravated robbery against either Christina or Erica. *See Hawkins v. State,* supra. (Slip Opinion at 5). The prosecutor specifically argued to the jury that it could apply a material element of the offense of aggravated robbery to either Christina or Erica. This was not a passing reference to the jury charge, and it is speculation to suggest that the jury, in light of the disjunctive jury charge and the State's argument, knew it had to be unanimous in finding all elements beyond a reasonable doubt as to both complaining witness.

In failing to apply appropriate weight to the effect of the State's closing argument, the Court of Appeals failed to properly review the error for egregious harm pursuant to *Almanza v. State.* The Court of Appeals has rendered a decision on

4

an important question of State law which conflicts with the applicable decisions of the Court of Criminal Appeals. See Tex. R. App. P 66.3 (c).

## PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, Appellant prays that this Honorable Court grant this Petition for Discretionary Review. Following the grant of review, Appellant prays that the judgment of the Court of Appeals be reversed and a new trial ordered, or the case remanded for further review.

Respectfully submitted,

*/s/Steven J. Lieberman*
STEVEN J. LIEBERMAN
TBA No. 12334020
712 Main Street, Suite 2400
Houston, Texas 77002
Telephone: (713) 228-8500
Facsimile: (713) 228-0034
Email: slieber699@aol.com

COUNSEL FOR APPELLANT,
RAY HAWKINS, JR.

5

## CERTIFICATE OF COMPLIANCE

Pursuant to Rule 9 of the Texas Rules Appellate Procedure, the undersigned counsel of record certifies that the Petition for Discretionary Review contains 1,663 words.

/s/ Steven J. Lieberman
STEVEN J. LIEBERMAN

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing Appellant's Petition For Discretionary Review was served via e-mail delivery through eFile.TXCourts.gov to Nancy M. Nemer, Special Prosecutor, Texas Attorney General's Office, 300 W. 15th Street, Austin, Texas 78711 and Lisa McMinn, State Prosecuting Attorney, P.O. Box 13046, Austin, Texas 78711, on this the 17th day of December 2015.

/s/ Steven J. Lieberman
STEVEN J. LIEBERMAN

**APPENDIX**

**Twelfth Court of Appeals' Opinion of October 21, 2015.**

# NO. 12-13-00394-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *RAY HAWKINS, JR.,*<br>*APPELLANT* | § | *APPEAL FROM THE 2ND* |
| *V.* | § | *JUDICIAL DISTRICT COURT* |
| *THE STATE OF TEXAS,*<br>*APPELLEE* | § | *CHEROKEE COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

Ray Hawkins, Jr. appeals his conviction for aggravated robbery, for which he was sentenced to imprisonment for seventy years. Appellant raises seven issues on appeal. We modify the trial court's judgment and affirm as modified.

## BACKGROUND

Appellant was charged by indictment with aggravated robbery. The indictment further alleged that Appellant was, as a juvenile, found to have engaged in delinquent conduct,[1] for which he was committed to the Texas Youth Commission for an indeterminate period. Appellant pleaded "not guilty," and the matter proceeded to a jury trial.

The evidence at trial demonstrated that on the morning of October 28, 2009, Christina Martinez and her niece, Erica Martinez, were working at a tortilla shop in Jacksonville, Texas. The record reflects that Appellant entered the shop before it opened and inquired about the cost of tortillas. Erica answered his question, and Appellant left without buying anything.

Moments later, Appellant returned along with Despond Thompson. Both men wielded firearms. The evidence indicates that Thompson pointed his weapon directly at Christina's head and demanded money while Appellant pointed his weapon, hidden beneath his sweatshirt, at

---

[1] The delinquent conduct was alleged to have been the commission of robbery in violation of penal law.

Erica's chest. Christina and Erica attempted to convey to the men that there was no money. In response, Thompson pointed his gun at Erica. He then took Erica's purse, which he put under his arm and, at some point, resumed pointing his gun at Christina. Both Christina and Erica testified that they thought they would be killed.

The evidence indicates that Appellant and Thompson ordered the two women to go into an office inside the shop. Appellant searched the women's aprons and pants pockets and continued to demand to know where the money was. Thompson remained outside pointing his gun at both women through a window in the office. After abandoning his search, Appellant left the office to speak to Thompson. Appellant later returned to the office and told the women that if they left the office, they would be killed. He then shut the office door and fled the premises along with Thompson.

After some time, the women left the office and discovered that the men had stolen Christina's cellular telephone. They exited the shop where they convinced a passerby to call the police. The police soon arrived and the women gave descriptions of the perpetrators. Days later, police apprehended Appellant and Thompson.

The police later compiled two photographic lineups—one, which included Thompson, and the other, which included Appellant. Christina and Erica were shown the lineups individually. Christina viewed the lineup containing Thompson's picture and identified him as the man who pointed a gun at her head. Erica viewed the lineup containing Appellant's picture and identified him as the person who pointed a gun at her. Both Christina and Erica also identified Appellant in open court as one of the two perpetrators.

The jury found Appellant "guilty" as charged, and the matter proceeded to a trial on punishment. At the outset of the punishment proceedings, Appellant stipulated and pleaded "true" to the enhancement allegation in the indictment. Ultimately, the jury assessed Appellant's punishment at imprisonment for seventy years. The trial court sentenced Appellant accordingly, and this appeal followed.

## CHARGE ERROR

In his first and second issues, Appellant argues that he was denied his constitutional and statutory rights to a unanimous jury verdict by the disjunctive submission in the jury charge of

2

two separate offenses. Consistent with the language of the indictment, the court's charge read, in pertinent part, as follows:

> Now, if you find from the evidence beyond a reasonable doubt, that on or about October 28[], 2009, in Cherokee County, Texas, the defendant, Ray Hawkins Jr., did then and there, acting alone or as a party as that term has been previously defined, while in the course of committing theft of property and with intent to obtain or maintain control of said property, intentionally or knowingly threaten or place Christina Martinez and or Erica Martinez in fear of imminent bodily injury or death, and the defendant did then and there use or exhibit a deadly weapon, to wit: a firearm, then you will find the defendant guilty of the offense of aggravated robbery as charged in the indictment.

## Submission of Disjunctive Charge Without Instruction on Unanimity of Jury's Verdict

Under the Texas constitution and Code of Criminal Procedure, a jury must reach a unanimous verdict. *See Landrian v. State*, 268 S.W.3d 532, 535 (Tex. Crim. App. 2008). The jury must agree that the defendant committed one specific crime. *Id.* For instance, a lack of unanimity can occur when the state alleges one offense, but presents evidence that the defendant committed the offense on multiple occasions. *See Cosio v. State*, 353 S.W.3d 766, 772 (Tex. Crim. App. 2011). Each of the multiple incidents individually establishes a different offense or unit of prosecution. *Id.* The court's charge, to ensure unanimity, needs to instruct the jury that its verdict must be unanimous as to a single offense or unit of prosecution among those presented. *See id.* With regard to the offense of robbery, the allowable unit of prosecution is "each victim." *Ex parte Hawkins*, 6 S.W.3d 554, 560 (Tex. Crim. App. 1999).

In the instant case, the State recognizes that the jury was charged in the disjunctive regarding the two robbery victims and that the jury should have been instructed that its verdict had to be unanimous as to a particular victim. The State concedes that since the jury was not instructed on the necessity of unanimity in this regard, that the submission of this disjunctive charge was erroneous. We agree.

## Harm Analysis

All alleged jury charge error must be considered on appellate review regardless of preservation in the trial court. *Kirsch v. State*, 357 S.W.3d 645, 649 (Tex. Crim. App. 2012). Once a court of appeals determines that error occurred, it must analyze that error for harm. *Id.* The issue of error preservation is not relevant until harm is assessed because the degree of harm required for reversal depends on whether the error was preserved. *Id.* When, as here, the

defendant fails to object to the charge, we will not reverse unless the record shows "egregious harm" to the defendant  *See Ngo v. State*, 175 S.W.3d 738, 743–44 (Tex. Crim. App. 2005).

To determine "egregious harm," a reviewing court examines "the entire jury charge, the state of the evidence, including the contested issues and weight of the probative evidence, the arguments of counsel, and any other relevant information revealed by the record of the trial as a whole." **Warner v. State**, 245 S.W.3d 458, 461 (Tex. Crim. App. 2008); *see also* **Taylor v. State**, 332 S.W.3d 483, 489 (Tex. Crim. App. 2011).  The appellant must have suffered actual, rather than theoretical, harm.  **Warner**, 245 S.W.3d at 461.  Errors that result in egregious harm are those that affect the very basis of the case, deprive the defendant of a valuable right, or vitally affect a defensive theory.  *Id.* at 461–62.

### *The Charge*

As set forth above, the charge permitted a nonunanimous verdict.  However, the charge also provided in pertinent part as follows:

> All persons are parties to an offense who are guilty of acting together in the commission of an offense.  A person is criminally responsible as a party to an offense if the offense is committed by his own conduct, by the conduct of another for which he is criminally responsible, or by both.

> Each party to an offense may be charged with the commission of the offense.

> A person is criminally responsible for an offense committed by the conduct of another if, acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense.

> Mere presence alone will not constitute one a party to an offense.

*See* TEX. PENAL CODE ANN. § 7.01 (West 2011).  Here, the evidence supports that Appellant, at the very least, acted with intent to assist Thompson and aided him in his commission of the robbery.[2]  Thus, even though only Christina identified Appellant before trial, Appellant remains responsible for Thompson's actions under the law of parties.  *Id.*  Moreover, the record indicates that Appellant threatened to kill both Christina and Erica if they left the office.  Further still, Christina and Erica identified Appellant at trial.  Therefore, the evidence supports that Appellant committed the crime either acting individually or as a party to Thompson's conduct.  *Id.*; *see* **Leza v. State**, 351 S.W.3d 344, 357 (Tex. Crim. App. 2011) (unanimity of jury's verdict concerning whether accused guilty as a principal actor or party not necessary).

---

[2] Appellant has not raised an issue challenging the sufficiency of the evidence.

4

*State of the Evidence*

Appellant's defense at trial was that he was misidentified by Christina and Erica. Thus, the jury was asked to consider two mutually exclusive theories—the State's theory that Appellant robbed the two victims or Appellant's theory that he did not rob either of them. *See, e.g.*, **Gonzales v. State**, 191 S.W.3d 741, 751 (Tex. App.–Waco 2006, pet. ref'd). Appellant neither argued to the jury, nor is there any evidence in the record to suggest, that the jury may have considered that Appellant robbed Erica, but not Christina. In finding Appellant "guilty," the jury plainly accepted the State's theory that Appellant was one of two men who robbed both Erica and Christina. *See **id.***

*Argument of Counsel*

During her jury argument, the prosecuting attorney made reference to the disjunctive submission. However, it is apparent from the record that she merely was attempting to quote a portion of the application paragraph from the court's charge. She did not, in any meaningful way, emphasize to the jury that it could find Appellant guilty if it found he committed the aggravated robbery against either Christina or Erica. *See id.* at 750 (concluding argument of counsel did not support egregious harm where State's comments did not rise to level of accentuation of error). Moreover, there are instances wherein the State took on the correct burden in spite of the erroneous charge language. For example, the prosecuting attorney summed up her jury argument as follows:

> Ladies and Gentlemen, this is a fairly simple case. These two poor women were trying to make a hard earned honest living from 3:00 o'clock in the morning, just doing their job, trying to make tortillas when this Defendant and his Co-defendant bursts in with a firearm, threatened to kill them, robbed them of the value of the property that they had on October 28th of 2009 in Cherokee County, Texas, and placed them in fear of imminent bodily injury or death, and as such we would ask that when you go back into the jury room after you have selected a foreman that you sign that the Defendant in this case is guilty of aggravated robbery.

Having considered the relevant factors and the record as a whole, we conclude that Appellant did not suffer error that affected the very basis of the case, deprived him of a valuable right, or vitally affected a defensive theory. Therefore, we hold that Appellant did not suffer egregious harm. Appellant's first and second issues are overruled.

In his third issue, Appellant argues that he was denied due process of law and the presumption of innocence by being shackled at trial. In his fourth issue, Appellant argues that he received ineffective assistance of counsel because his trial counsel failed to object to his being shackled.

**Governing Law**

The Fourteenth Amendment guarantees criminal defendants the right to a fair trial. *See Estelle v. Williams*, 425 U.S. 501, 503, 96 S. Ct. 1691, 1692, 48 L. Ed. 2d 126 (1976). Three constituent elements of this guarantee are directly implicated by the shackling of a criminal defendant during trial proceedings. *See Deck v. Missouri*, 544 U.S. 622, 630, 125 S. Ct. 2007, 2013, 161 L. Ed. 2d 953 (2005). First, "the criminal process presumes that the defendant is innocent until proven guilty." *Id.* A defendant who is visibly shackled does not have the benefit of this bedrock presumption and thus his right to a fair trial is fundamentally compromised. *Id.* Second, "the Constitution, in order to help the accused secure a meaningful defense, provides him with a right to counsel." *Id.*, 544 U.S. at 631, 125 S. Ct. at 2013. The use of shackles may undermine this right by impeding a defendant's ability to effectively communicate with his attorney. *Id.* Third, "the routine use of shackles in the presence of juries" compromises "[t]he courtroom's formal dignity, which includes the respectful treatment of defendants, reflects the importance of the matter at issue, guilt or innocence, and the gravity with which Americans consider any deprivation of an individual's liberty through criminal punishment." *Id.*

For the reasons stated above, "[t]he law has long forbidden the use of visible shackles during the guilt phase" of a criminal defendant's trial. *Id.*, 544 U.S. at 626, 125 S. Ct. at 2010. Despite this general rule, courts recognize that it may be necessary for certain defendants to be restrained in exceptional circumstances. *See id.*, 544 U.S. at 629, 125 S. Ct. at 2012; *Wiseman v. State*, 223 S.W.3d 45, 50 (Tex. App.–Houston [1st Dist.] 2006, pet. ref'd). Such circumstances may arise, for instance, when a defendant has demonstrated a propensity to escape or has threatened or assaulted courtroom personnel, thereby implicating an essential state interest, namely, courtroom security. *See Deck*, 544 U.S. at 632, 125 S. Ct. at 2014. Prior to the use of shackles, however, a trial court must make a specific finding that they are necessary for reasons particular to a given case. *See Deck*, 544 U.S. at 627, 125 S. Ct. at 2011 ("[T]rial courts may not shackle defendants routinely, but only if there is a particular reason to do so.").

## Preservation of Error

We first note that the record reflects Appellant did not object at trial to being shackled or to the lack of specific findings by the trial court justifying the use of shackles. Because Appellant did not object at trial, he has waived his right to appeal on these grounds. *See* TEX. R. APP. P. 33.1(a); *Cedillos v. State*, 250 S.W.3d 145, 150 (Tex. App.–Eastland 2008, no pet.) (holding because defendant "did not object on the record to the use of restraints in the jury's presence, this issue is waived . . . ."); *Wiseman*, 223 S.W.3d at 49 (holding defendant's failure to object at trial that his shackling violated Texas constitution waived his right to appellate review on that ground); *see also* *Rivera-Sanchez v. State*, No. 01-14-00415-CR, 2015 WL 3751489, at *3 (Tex. App.–Houston [1st Dist.] June 16, 2015, no pet.) (mem. op., not designated for publication); *Kelley v. State*, No. 05–09–01438–CR, 2012 WL 2628074, at *6 (Tex. App.–Dallas July 6, 2012, pet. ref'd) (mem. op., not designated for publication) (holding that shackling is not fundamental error and thus, defendant needed to object to preserve error); *Pereida v. State*, No. 13–09–354–CR, 2010 WL 2783743, at *6 (Tex. App.–Corpus Christi July 15, 2010, pet. ref'd) (mem. op., not designated for publication) (concluding that defendant's failure to object to use of shackles caused complaint to be waived). Appellant's third issue is overruled.

## Ineffective Assistance of Counsel

Claims of ineffective assistance of counsel are evaluated under the two step analysis articulated in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 674 (1984). The first step requires the appellant to demonstrate that trial counsel's representation fell below an objective standard of reasonableness under prevailing professional norms. *See Strickland*, 466 U.S. at 688, 104 S. Ct. at 2065. To satisfy this step, the appellant must identify the acts or omissions of counsel alleged to be ineffective assistance and affirmatively prove that they fell below the professional norm of reasonableness. *See McFarland v. State*, 928 S.W.2d 482, 500 (Tex. Crim. App. 1996). The reviewing court will not find ineffectiveness by isolating any portion of trial counsel's representation, but will judge the claim based on the totality of the representation. *See Strickland*, 466 U.S. at 695, 104 S. Ct. at 2069.

To satisfy the *Strickland* standard, the appellant is also required to show prejudice from the deficient performance of his attorney. *See Hernandez v. State*, 988 S.W.2d 770, 772 (Tex. Crim. App. 1999). To establish prejudice, an appellant must prove that but for counsel's

7

deficient performance, the result of the proceeding would have been different. *See Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068.

In any case considering the issue of ineffective assistance of counsel, we begin with the strong presumption that counsel was effective. *See Jackson v. State*, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994). We must presume counsel's actions and decisions were reasonably professional and were motivated by sound trial strategy. *See id*. Appellant has the burden of rebutting this presumption by presenting evidence illustrating why his trial counsel did what he did. *See id*. Appellant cannot meet this burden if the record does not affirmatively support the claim. *See Menefield v. State*, 363 S.W.3d 591, 592 (Tex. Crim. App. 2012); *Garza v. State*, 213 S.W.3d 338, 347–48 (Tex. Crim. App. 2007); *Jackson v. State*, 973 S.W.2d 954, 955 (Tex. Crim. App. 1998). A record that specifically focuses on the conduct of trial counsel is necessary for a proper evaluation of an ineffectiveness claim. *See Kemp v. State*, 892 S.W.2d 112, 115 (Tex. App.–Houston [1st Dist.] 1994, pet. ref'd).

Appellant's burden on appeal is well established. *See Saenzpardo v. State*, No. 05-03-01518-CR, 2005 WL 941339, at *1 (Tex. App.–Dallas 2005, no pet.) (op., not designated for publication). Before being condemned as unprofessional and incompetent, defense counsel should be given an opportunity to explain his or her actions. *See Bone v. State*, 77 S.W.3d 828, 836 (Tex. Crim. App. 2002). Thus, absent a properly developed record, an ineffective assistance claim must usually be denied as speculative, and, further, such a claim cannot be built upon retrospective speculation. *Id*. at 835.

### *Evaluation of Counsel's Performance*

In the instant case, there is no record in which Appellant's trial counsel was permitted to explain why he took the actions he did. Nonetheless, an examination of the record clarifies the matter.

Throughout most of the record of Appellant's trial, there is no suggestion that he is wearing shackles. The first indication that he was shackled transpired when Appellant's counsel made reference to shackles during his jury argument. Specifically, Appellant's counsel argued, in pertinent part, as follows:

> Your duty is to see that justice is done based on the law and the evidence you hear and they are asking you to make such a paramount and monumental decision for this young man's life when they can't even get their story straight about how long the witness took to look at a photo line-up before they could identify -- she said she positively identified the subject. And to say that, oh, oh,

she saw him when she got to the courthouse, yeah, that was him. Really? You mean the guy that is being escorted around by the gentleman over here in the uniform and the guy that has got leg irons on.  Not too hard to pick him out, is it? Or the guy on trial sitting next to Defense Counsel? It is not too hard to pick him out.

In responding to Appellant's argument, the State denied that Appellant was wearing leg irons in court.  The trial court also made statements indicating that it was not aware that Appellant was wearing shackles.[3]

In his argument, Appellant is referring to Christina's identification of Appellant that she made upon her arrival at the courthouse before trial.  The objective of this argument is to discredit her identification based on the fact that Appellant may have been wearing shackles outside of the courtroom when she first saw him that day.  It is unclear from the record whether Appellant was, in fact, shackled during trial.  But what is apparent from the record is that Appellant's counsel's mentioning the fact that his client was, at some point, in shackles was done with the purpose to weaken the State's evidence on the element of identity.  Thus, we conclude that Appellant's counsel's argument, though unconventional, appears to have been motivated by a sound trial strategy.  Therefore, we hold that Appellant has not met the first prong of *Strickland* and, as a result, he has not overcome the strong presumption that his counsel performed effectively.  Appellant's fourth issue is overruled.

## LIMITATIONS ON VOIR DIRE CONCERNING RANGE OF PUNISHMENT

In his fifth issue, Appellant argues that the trial court committed reversible error by preventing him from conducting voir dire on the full range of punishment by refusing to permit him to question the venire panel about Appellant's possibly receiving community supervision.

**Standard of Review and Governing Law**

We review the trial court's determination concerning the propriety of a voir dire question for abuse of discretion.  *See Barajas v. State*, 93 S.W.3d 36, 38 (Tex. Crim. App. 2002).  The trial court abuses its discretion only when a proper question concerning a proper area of inquiry is prohibited.  *See Dinkins v. State*, 894 S.W.2d 330, 345 (Tex. Crim. App. 1995).

---

[3] The fact that Appellant brought up the notion before the jury that his client was wearing leg irons when there is no indication that the jury, the court, or the prosecuting attorney was aware of this fact serves to estop him from arguing any such error on appeal.  *See Prystash v. State*, 3 S.W.3d 522, 531 (Tex. Crim. App. 1999) (discussing invited error doctrine).

The purposes of voir dire are to (1) develop a rapport between the officers of the court and the jurors; (2) expose juror bias or interest warranting a challenge for cause; and (3) elicit information necessary to intelligently use peremptory challenges. *Dhillon v. State*, 138 S.W.3d 583, 587 (Tex. App.–Houston [14th Dist.] 2004, pet. struck). However, a trial judge may not restrict proper questions that seek to discover a juror's views on issues relevant to the case. *Id.* The scope of permissible voir dire examination is necessarily broad to enable litigants to discover bias or prejudice so that they may make challenges for cause or peremptory challenges. *Zavala v. State*, 401 S.W.3d 171, 175 (Tex. Crim. App. 2011).

Both parties are entitled to jurors who can consider the entire range of punishment for the particular statutory offense, i.e., from the maximum to the minimum and all points in between. *See Cardenas v. State*, 325 S.W.3d 179, 184 (Tex. Crim. App. 2010). Jurors must be able to consider both a situation in which the minimum penalty would be appropriate and a situation in which the maximum penalty would be appropriate. *Id.* Therefore, both sides may question the panel on the range of punishment and may commit jurors to consider the entire range of punishment for the statutory offense. *Id.* A question committing a juror to consider the minimum punishment is both proper and permissible. *Id.*

In the case at hand, the State argues that Appellant was not eligible for community supervision because he judicially admitted that he previously was "given an indeterminate sentence for a juvenile finding of having engaged in delinquent conduct for the charge of robbery."[4]

**Judicial Admissions**

A judicial admission or stipulation may be used in a criminal case to prove up a prior conviction. *See Beck v. State*, 719 S.W.2d 205, 209 (Tex. Crim. App. 1986); *Davis v. State*, No. 06-07-00209-CR, 2008 WL 3914966, at *2 (Tex. App.–Texarkana Aug. 18, 2008, no pet.)

---

[4] For Appellant to have been considered ineligible for community supervision, the State was required to prove the enhancement pursuant to Texas Penal Code, Sections 12.42(c)(1) and (f). The enhancement under Section 12.42(c)(1), if proven, would raise Appellant's minimum sentence to imprisonment for fifteen years. *See* TEX. PENAL CODE ANN. 12.42(c)(1) (West Supp. 2014). Thus, if the enhancement were proven, the jury could not consider community supervision as punishment because Appellant's minimum sentence would be greater than ten years. *See* TEX. CODE CRIM. PROC. ANN. art. 42.12 § 4(d)(1) (West Supp. 2014). To prove the enhancement, the State could rely on the finding that Appellant was found to have committed delinquent conduct by committing robbery, for which he was committed to the Texas Juvenile Justice Department or to a postadjudication secure correctional facility. *See* TEX. PENAL CODE ANN. 12.42(f) (West Supp. 2014); TEX. FAM. CODE ANN. § 54.04(d)(2), (l) (West 2014).

(mem. op., not designated for publication). A judicial admission is not evidence. *See Bryant v. State*, 187 S.W.3d 397, 400 (Tex. Crim. App. 2005). Rather, it is a formal concession in the pleadings in the case or a stipulation by a party or his counsel that has the effect of withdrawing a fact from issue and dispensing wholly with the need for proof thereof. *See id.*

The source of a judicial admission may be facts alleged in a pleading, an agreed upon statement of facts, a stipulation, or a formal declaration made in open court by a party or counsel. *Davidson v. State*, 737 S.W.2d 942, 948 (Tex. App.–Amarillo 1987, pet. ref'd). As long as the source of the admission remains unretracted, it must be taken as true by the court and the jury. *Davidson*, 737 S.W.2d at 948.[5] It is binding on the declarant, and he cannot introduce evidence to contradict it. *Id.*

However, to qualify as a judicial admission, the accused's statement should be "clear and intentional." *Taulung v. State*, 979 S.W.2d 854, 857 (Tex. App.–Waco 1998, no pet.); *Avila v. State*, 954 S.W.2d 830, 835 (Tex. App.–El Paso 1997, pet. ref'd). The "intention" as it relates to a judicial admission is the intention to make "an act of waiver." *Griffin v. Superior Ins. Co.*, 338 S.W.2d 415, 420 (Tex. 1960). In other words, the party must intend to relinquish the right to have the State prove its case. *Cf. Wappler v. State*, 138 S.W.3d 331, 333 (Tex. Crim. App. 2004) (waiver requires intentional relinquishment or abandonment of known right); *see Bryant*, 187 S.W.3d at 400.

In the instant case, Appellant filed an Application for Community Supervision, in which he asserted as follows:

> RAY HAWKINS, JR. has never before been convicted of a felony in the State of Texas or any other state as the term "conviction" is defined by the Texas Code of Criminal Procedure in regard to probation eligibility.
>
> RAY HAWKINS, JR. has been given an indeterminate sentence for a juvenile finding of having engaged in delinquent conduct for the charge of robbery.

Appellant also filed an application to seal files and records, in which he stated as follows:

---

[5] In a civil context, the elements for establishing that a statement is a judicial admission are (1) the statement must be made in the course of a judicial proceeding; (2) it must be contrary to an essential fact or defense asserted by the party; (3) it must be deliberate, clear, and unequivocal; (4) it cannot be destructive of the opposing party's theory of recovery or defense; and (5) enforcing the statement as a judicial admission must be consistent with public policy. *See Khan v. GBAK Properties, Inc.*, 371 S.W.3d 347, 357 (Tex. App.–Houston [1st Dist.] 2012, no pet.).

Applicant was charged with the felony offense of robbery. He was not transferred to a criminal court for prosecution pursuant to Section 54.02 of the Texas Family Code. He was placed on juvenile probation for a period of 12 months.

In each of these pleadings, Appellant made clear, unequivocal statements of facts during the course of a judicial proceeding. However, there is no indication from the context of these statements or elsewhere in the record that Appellant intended the statements to be an act of waiver of his right to have the State prove these facts its case against him. Indeed, Appellant made one of these statements in an application for community supervision. It would be counterintuitive for this court to conclude that Appellant, in seeking to have the jury consider community supervision, would make a statement with the intent that such a statement should foreclose that option. Moreover, in attempting to seal records pertaining to the previous court finding concerning his delinquent conduct, it makes little sense that Appellant intended to dispense wholly with the need for the State to prove the facts he was attempting to seal. Accordingly, we conclude that Appellant's statements concerning the finding of delinquent conduct made in his application for community supervision and application to seal files and records were not judicial admissions. Therefore, Appellant was entitled to conduct voir dire examination on the venire panel concerning the entire range of punishment, including community supervision, and the trial court abused its discretion by restricting Appellant's examination on that subject.

**Proof Required for Enhancement**

Even assuming arguendo that Appellant's statements amounted to judicial admissions, the outcome would not differ. Under Section 12.42(f), an adjudication by a juvenile court that a child engaged in delinquent conduct constituting a felony offense is considered a final felony conviction for purposes of enhancement, but only if it resulted in the child's being committed to the Texas Juvenile Justice Department or to a postadjudication secure correctional facility. *See* TEX. PENAL CODE. ANN. § 12.42(f). In the instant case, neither of the documents the State argues are judicial admissions indicate that Appellant was so committed. Rather, according to Appellant's application to seal files and records, he was placed on juvenile probation for twelve months. Therefore, we conclude that even if the documents in question were, in fact, judicial admissions, without more, they are insufficient to enable the State to prove up the enhancement.

12

**Harm Analysis**

The court of criminal appeals recently held that the proper analysis is not to apply a per se harm analysis rule to a voir dire error, but rather to determine if the error is substantial enough to warrant a Rule 44.2(a) harm analysis; if not, then the error is reviewed under Rule 44.2(b). *See Easley v. State*, 424 S.W.3d 535 (Tex. Crim. App. 2014); *see also* TEX. R. APP. P. 44.2. More specifically, the court held as follows:

> [W]e overrule *Plair*[6] to the extent it holds that erroneously limiting an accused's or counsel's voir dire presentation is constitutional error because the limitation is a per se violation of the right to counsel. This, of course, is different from holding that such an error may never rise to the level of constitutional magnitude. There may be instances when a judge's limitation on voir dire is so substantial as to warrant labeling the error as constitutional error subject to a Rule 44.2(a) harm analysis.

*Easley*, 424 S.W.3d at 541.

Under Rule 44.2(b), which applies to nonconstitutional error, we will affirm a judgment unless the error affects the appellant's substantial rights or deprives him of a fair trial. *See* TEX. R. APP. P. 44.2(b); *Easley*, 424 S.W.3d at 539, 541–42 (citing *Johnson v. State*, 43 S.W.3d 1, 4 (Tex. Crim. App. 2001)). But under Rule 44.2(a), if the error is a constitutional violation, we must reverse the judgment unless we determine "beyond a reasonable doubt that the error did not contribute to the conviction or punishment." TEX. R. APP. P. 44.2(a); *see Easley*, 424 S.W.3d at 540–41.

A juror must be able to consider the full range of punishment for an offense, and a defendant's voir dire question about a juror's ability to do so is generally proper. *Cardenas v. State*, 325 S.W.3d 179, 184 (Tex. Crim. App. 2010); *see* TEX. CODE CRIM. PROC. art. 35.16(c)(2) (West 2006). If a juror cannot consider an offense's full range of punishment, the juror is challengeable for cause. *Cardenas*, 325 S.W.3d at 184–85; *see also Standefer v. State*, 59 S.W.3d 177, 181 (Tex. Crim. App. 2001); *Banda v. State*, 890 S.W.2d 42, 55 (Tex. Crim. App. 1994) (explaining that a "person who testifies unequivocally that he could not consider the minimum sentence as a proper punishment for [an] offense . . . is properly the subject of a challenge for cause").

In the instant case, the trial court refused to allow Appellant to question the venire panel about whether it could consider community supervision because it erroneously concluded that

---

[6] *See Plair v. State*, 279 S.W. 267 (Tex. Crim. App. 1926).

Appellant had judicially admitted the enhancement allegations. In light of **Easley**, we must determine if this error is a constitutional error or a nonconstitutional error. **Id**. at 541. In so doing, we are guided by the analysis of a similar issue by one of our sister courts. In **Hill v. State**, the court considered the level of harm analysis to be applied when the trial court refused to permit the appellant from questioning the venire panel on the full range of punishment in the event enhancements were proved. *See* **Hill**, 426 S.W.3d 868, 877 (Tex. App.–Eastland 2014, pet. ref'd). In holding that this error is a constitutional violation, the court explained as follows:

> Defense counsel is entitled to ask the venire members the question of whether they could consider the full range of punishment, and if the trial court prevents counsel from doing that, then defense counsel may not be able to discern if a juror should be struck for cause because he is unqualified. A venire member is disqualified if he has prejudged the case or cannot follow the court's instructions. To have such an unqualified venire member . . . on the jury is a violation of the defendant's right to an impartial jury.

**Id**. (citations omitted). We agree with the analysis of our sister court and hold that the error in the instant case is subject to harm analysis pursuant to Rule 44.2(a).

Thus, we next consider whether the error here did not, beyond a reasonable doubt, contribute to the punishment as assessed by the jury. *See* **id**. In so doing, we must take into account any and every circumstance apparent in the record that logically informs us on the determination of whether, beyond a reasonable doubt, the error in question did not contribute to the conviction or punishment. *See* **Snowden v. State**, 353 S.W.3d 815, 822 (Tex. Crim. App. 2011).

In reviewing the record, we note that at the outset of his trial on punishment, Appellant stipulated to the enhancement allegations and pleaded "true" thereto. The jury ultimately found the enhancement allegation to be "true." As a result, the jury could not properly consider sentencing Appellant to community supervision.[7] Therefore, because the jury could not legally consider community supervision in determining Appellant's punishment, we hold that the record supports beyond a reasonable doubt that Appellant suffered no harm from the trial court's erroneous ruling. *Cf.* **Hart v. State**, 173 S.W.3d 131, 143 (Tex. App.–Texarkana 2005, no pet.) (no error where trial court refused to permit the appellant to question venire panel on range of punishment if state failed to prove enhancement because enhancements found to be "true" and

---

[7] *See* n.3.

the appellant was sentenced under range of punishment about which panel was questioned).[8] Appellant's fifth issue is overruled.

## MOTION FOR NEW TRIAL

In his sixth issue, Appellant argues that the trial court erred in denying his motion for new trial based on the same grounds raised in his fifth issue. The standard of review for a trial court's ruling on a motion for new trial is abuse of discretion. ***Dunklin v. State***, 194 S.W.3d 14, 19 (Tex. App.–Tyler 2006, no pet.) In reviewing for an abuse of discretion, an appellate court will reverse the trial court's ruling only when that decision is so clearly wrong as to lie outside the zone within which reasonable persons might disagree. ***Id.***

In his motion for new trial, Appellant argued that the facts were legally and factually insufficient to support his conviction and sentence. He did not make any argument in his motion related to the trial court's limiting his voir dire examination.[9] Therefore, because the trial court did not have the opportunity to rule on this complaint, its ruling denying the motion could not have been erroneous based on the limitation of voir dire. *See **Brewer v. State***, No. 03-10-00076-CR, 2014 WL 709549, at *16 (Tex. App.–Austin Feb. 21, 2014, no pet.) (mem. op., not designated for publication). Further still, we have overruled Appellant's fifth issue because the error caused Appellant no harm. Therefore, even assuming arguendo that Appellant properly raised this issue in his motion for new trial, we conclude that the trial court did not abuse its discretion in denying Appellant's motion for new trial on these grounds. *See **id.*** (court of

---

[8] In conjunction with Appellant's stipulating to the enhancement allegations, Appellant's counsel told the trial court that because of the trial court's ruling, Appellant had to change his trial strategy. This statement was made in the context of informing the trial court that Appellant did not intend to waive his previous objections concerning the trial court's limiting his voir dire examination. However, Appellant's counsel did not elaborate on this change of trial strategy and there is no evidence of record that would allow us to determine what that change was or whether Appellant was harmed thereby.

[9] At the outset of the hearing on his motion for new trial, Appellant reiterated that his argument concerned legal and factual insufficiency. In his argument to the trial court, Appellant made reference to the voir dire proceedings. However, it is apparent that his argument concerning voir dire was premised on the notion that the juvenile conviction could not be used to support the enhancement. When the prosecuting attorney responded that Appellant ultimately had stipulated to the enhancement and cited to Texas Penal Code Section 12.42(f) in support of her argument, Appellant replied that he had no response. Appellant made no reference to judicial admissions. To the extent that Appellant raised any argument concerning the trial court's actions during voir dire at the hearing on Appellant's motion for new trial, those arguments do not comport with Appellant's argument on appeal. *See **Santellan v. State***, 939 S.W.2d 155, 171 (Tex. Crim. App. 1997) (to preserve error for review on appeal, defendant's complaint on appeal must comport with objection raised at trial).

appeals determined that because error was harmless, trial court did not abuse its discretion in overruling motion for new trial on that ground).  Appellant's sixth issue is overruled.

<strong><u>ASSESSMENT OF ATTORNEY'S FEES</u></strong>

In his seventh issue, Appellant argues that the trial court erred by assessing attorney's fees against him because he is indigent.

**<u>Standard of Review and Applicable Law</u>**

A challenge to the sufficiency of the evidence supporting court costs is reviewable on direct appeal in a criminal case.  *See **Armstrong v. State***, 340 S.W.3d 759, 767 (Tex. Crim. App. 2011).  We measure sufficiency by reviewing the record in the light most favorable to the award.  *See **Mayer v. State***, 309 S.W.3d 552, 557 (Tex. Crim. App. 2010); ***Cardenas v. State***, 403 S.W.3d 377, 388 (Tex.–Houston [1st Dist.] 2013, no pet.).  Requiring a convicted defendant to pay court costs does not alter the range of punishment, is authorized by statute, and is generally not conditioned on a defendant's ability to pay.  *See* TEX. CODE CRIM. PROC. ANN. art. 42.16 (West 2006); ***Armstrong***, 340 S.W.3d at 767; *see also **Johnson v. State***, 405 S.W.3d 350, 354 (Tex. App.–Tyler 2013, no pet.).

Some court costs, such as attorney's fees, may not be assessed against a defendant if he was found indigent because his indigence is presumed to continue throughout the remainder of the proceedings "unless a material change in [his] financial circumstances occurs." *See* TEX. CODE CRIM. PROC. ANN. art. 26.04(p) (West Supp. 2014).  If a trial court does not make a determination that a defendant's financial circumstances materially changed that is also supported by some factual basis in the record, the evidence will be insufficient to impose attorney's fees as court costs.  *See* TEX. CODE CRIM. PROC. ANN. arts. 26.04(p), 26.05(g) (West Supp. 2014); ***Mayer***, 309 S.W.3d at 553; ***Wolfe v. State***, 377 S.W.3d 141, 144, 146 (Tex. App.–Amarillo 2012, no pet.).

**<u>Evidence Supporting Assessment of Costs</u>**

In the instant case, the judgment of conviction reflects that the trial court assessed $5,100.00 in attorney's fees.  The judgment includes a document identified as "Attachment A Order to Withdraw Funds," which states that Appellant "has this date been assessed . . . attorney's fees in the amount of $5,100.00[.]"  The certified bill of costs itemizes the balance of

16

the court costs imposed. Among the costs listed is one for "Ad Litem Attorney's Fees" in the amount of $5,100.00.

The State concedes that the attorney's fees set forth in the bill of costs is improper. The record reflects that the trial court found that Appellant was "indigent,"[10] and there is no evidence in the record to rebut the presumption that Appellant's indigence continued throughout the remainder of the proceedings. *See* TEX. CODE CRIM. PROC. ANN. art. 26.04(p); *Wolfe*, 377 S.W.3d at 144. As a result, the evidence is insufficient to support the imposition of attorney's fees as court costs. *See* TEX. CODE CRIM. PROC. ANN. art. 26.04(p), 26.05(g); *Mayer*, 309 S.W.3d at 553; *Wolfe*, 377 S.W.3d at 146. Therefore, because attorney's fees were erroneously assessed against Appellant, we hold that the judgment, Attachment "A," and Bill of Costs should be modified to remove any reference to assessment of attorney's fees. Appellant's seventh issue is sustained.

<u>DISPOSITION</u>

We have overruled Appellant's first, second, third, fourth, fifth, and sixth issues, but have sustained his seventh issue. Having done so, we *modify* the trial court's judgment, Attachment "A" to the judgment, and Bill of Costs to remove any reference to assessment of attorney's fees against Appellant and *affirm* the trial court's judgment *as modified*.

<u>GREG NEELEY</u>
Justice

Opinion delivered October 21, 2015.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(DO NOT PUBLISH)

---

[10] The trial court made an express finding of Appellant's indigence in conjunction with its appointment of counsel for appeal one day after the judgment was signed. The trial court previously had appointed counsel for Appellant after multiple attorneys retained by Appellant were permitted to withdraw. The trial court did not make an express finding that Appellant was indigent at this time. However, that finding of indigence is implicit in the trial court's action because the authority of a trial judge to appoint counsel exists only when the defendant is indigent. *See* TEX. CODE CRIM. PROC. ANN. art. 26.04 (West 2014); *Anders v. State*, No. 06-12-00207-CR, 2013 WL 3893944, at *2 & n.5 (Tex. App.–Texarkana July 24, 2013, no pet.) (mem. op., not designated for publication).